757 A.2d 783

**Michael D. BISHOP**

v.

**STATE FARM MUTUAL AUTO INSURANCE.**

**No. 129, Sept. Term, 1998.**

Court of Appeals of Maryland.

Aug. 18, 2000.

Andrew Janquitto (Mudd, Harrison & Burch, on brief), Towson, and Michael James O'Rourke, on brief, Annapolis, for petitioner.

Ronald A. Baradel (Council, Baradel, Kosmerl & Nolan, P.A., on brief), Annapolis, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER ** and CATHELL, JJ.

---

\* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

\*\* Wilner, J., participated in the oral argument, but did not participate in the decision and the adoption of the opinion.

ELDRIDGE, Judge.

This State's Insurance Code, Maryland Code (1957, 1991 Repl.Vol., 1992 Cum.Supp.), Article 48 A, § 539, and its motor vehicle law, Code (1977, 1987 Repl.Vol.), §§ 17–103 and 17–104(b) of the Transportation Article, generally require that motor vehicle insurance policies on vehicles required to be registered in Maryland provide coverage for "medical, hospital, and disability benefits" in a minimum amount of $2500.[1] These benefits are known as "Personal Injury Protection" or "PIP" benefits, and they are payable without regard to fault. The issue in this case is whether the petitioner, who was injured in an accident occurring while he was a passenger in a motor vehicle insured by the respondent State Farm Mutual Automobile Insurance Company, is entitled to collect PIP benefits under the State Farm insurance policy despite his previous receipt of PIP benefits from his own insurer.

I.

The petitioner, Michael Bishop, was a passenger in an automobile owned and driven by Karen Fleagle Scott and insured by the respondent, State Farm. While driving the automobile in Queen Anne's County, Maryland, Scott allegedly lost control of the vehicle on a curve, with the vehicle "striking a ditch, and thereby causing the vehicle to overturn, spin in the air, and, come to rest on its roof in a wooded area...." Bishop was ejected from the vehicle and sustained serious injuries. Scott, a former Pennsylvania resident, had insured the car in Pennsylvania. Prior to the accident, however, Scott had become a Maryland resident and had registered her vehicle in Maryland.

---

1. By Chapter 11 of the Acts of 1996, Art. 48A, § 539, was repealed and reenacted without substantive change as Code (1997), § 19–505 of the Insurance Article. At the time of the accident, the relevant statutory provisions were Code (1957, 1991 Repl.Vol., 1992 Cum.Supp.), Art. 48A, §§ 539 through 547A. Accordingly, all statutory references in this opinion shall be to the Art. 48A provisions.

As a result of the accident, Bishop suffered damages allegedly in excess of $30,000 in medical bills and lost wages. The State Farm policy covering Scott's vehicle provides, *inter alia,* up to $100,000 per person for medical expenses, and $15,000 per person for loss of wages, available to an "insured," defined as including any person occupying the policyholder's vehicle.

Shortly after the accident, State Farm sent to Bishop the necessary forms to file a PIP claim under the State Farm policy, and Bishop completed and returned the forms. He also underwent a medical examination at State Farm's request. Three months after Bishop filed the PIP claim with State Farm, that insurer denied the claim. While the State Farm PIP claim was pending, Bishop also filed a claim with his own insurer, the Maryland Automobile Insurance Fund (MAIF), for PIP benefits. MAIF paid Bishop $2,500, the full amount of PIP coverage under his policy. State Farm's denial of PIP coverage under Scott's policy occurred after MAIF had paid Bishop's claim.

Bishop filed a complaint in the Circuit Court for Queen Anne's County against Scott and State Farm. Count I of the complaint sought damages from Scott as a result of the alleged negligent operation of her motor vehicle. In count II, Bishop alleged that State Farm wrongfully denied PIP benefits to him, and he sought damages under a breach of contract theory. Prior to trial, Bishop settled his claim against Scott. Thereafter, the Circuit Court granted State Farm's motion for summary judgment on count II of the complaint. The Circuit Court based its decision entirely on the Maryland statutory provisions providing for and regulating PIP benefits, namely Art. 48A, §§ 539 and 543. Subsection (a) of § 543 states as follows:

> (a) *"Recovery where more than one policy.*—Notwithstanding any other provision of this subtitle, no person shall recover benefits under the coverages described under §§ 539 and 541 of this subtitle from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis."

The Circuit Court held that because Bishop did, in fact, receive PIP benefits from MAIF, any further recovery was barred as "duplicative or supplemental" under § 543(a). The court noted that if Bishop had not accepted the $2,500 from MAIF, "[w]e might then have had an extremely interesting exercise which would have taken us much longer, perhaps, of deciding what the pecking order was." According to the trial court, it was the receipt of the minimum PIP benefits that triggered the application of § 543(a).

On appeal, the Court of Special Appeals affirmed the judgment of the Circuit Court, but based its decision on its interpretation of the terms of the State Farm policy and not on the statutory provisions regulating PIP benefits. In fact, the intermediate appellate court, in an unreported opinion, seemed to disagree with the trial court's holding. The Court of Special Appeals stated that it was "not persuaded that [Bishop] is prohibited by Maryland law from asserting a medical benefits claim against [State Farm]." The appellate court went on to note that "[t]here may be a case in which an injured person will be entitled to recover PIP benefits from two or more insurance policies." Nevertheless, the Court of Special Appeals held that the priority provision of the State Farm policy prohibited Bishop from recovering under that policy.

Bishop timely filed a petition for a writ of certiorari which this Court granted. *Bishop v. State Farm,* 352 Md. 309, 721 A.2d 988 (1998). State Farm did not file a cross-petition for a writ of certiorari.

## II.

As previously mentioned, the Maryland statutory provisions regulating motor vehicles and motor vehicle insurance require, as "basic required primary coverage," so-called PIP benefits. Unless "the first named insured ... make[s] an affirmative written waiver of those benefits," Maryland law requires coverage providing benefits for medical expenses and loss of wages up to a minimum of $2500. *See* Art. 48A, § 539;

§§ 17–103 and 17–104 of the Transportation Article. While the minimum required PIP coverage under the Maryland statutory scheme is $2500, the language of Art. 48A, §§ 539 and 541 (relating to uninsured motorist coverage) clearly "contemplate[s] insurers offering higher coverage." *Hoffman v. United Services Auto. Ass'n,* 309 Md. 167, 177, 522 A.2d 1320, 1325 (1987). *See Hines v. Potomac Elec. Power Co.,* 305 Md. 369, 373, 504 A.2d 632, 634 (1986). The "main purpose" of the legislation requiring PIP coverage was " 'to assure financial compensation to victims of motor vehicle accidents without regard to the fault of a named insured or other persons entitled to PIP benefits.' " *Clay v. GEICO,* 356 Md. 257, 265–266, 739 A.2d 5, 10 (1999), quoting *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151, 154, 416 A.2d 734, 736 (1980). For a recent discussion of the history and purpose of the statutory provisions relating to PIP coverage, *see MAIF v. Perry,* 356 Md. 668, 741 A.2d 1114 (1999).

■ Although Scott's State Farm policy was issued in Pennsylvania, "the Maryland statutory provisions regulating PIP coverage and benefits" apply not only to "insurance policies issued, sold, or delivered in Maryland," but also "to motor vehicles required to be registered in Maryland...." *Ward v. Nationwide,* 328 Md. 240, 247, 614 A.2d 85, 88 (1992). *See Allstate Ins. Co. v. Hart,* 327 Md. 526, 533, 611 A.2d 100, 103 (1992) ("The General Assembly in the Vehicle Law and the Insurance Code precisely delineated, in terms of vehicles and insurance policies, the scope of the statutorily required motor vehicle insurance coverages. Under Code (1977, 1987 Repl. Vol.), § 17–104(b) of the Transportation Article, the required insurance coverages must be maintained on 'a motor vehicle that is required to be registered in this State' "); *Larimore v. American Ins. Co.,* 314 Md. 617, 618–619, 552 A.2d 889, 889 (1989) (Maryland statutory provisions regulating automobile insurance are applicable to "every motor vehicle required to be registered in Maryland").

When Scott became a Maryland resident, she was subject to the motor vehicle registration requirements set forth in Code

(1977, 1999 Repl.Vol., 1999 Supp.) § 13–402 of the Transportation Article, and she did in fact register her automobile in Maryland. Consequently, the Maryland statutory provisions regulating motor vehicle insurance, including the provisions regulating PIP, were applicable to Scott's vehicle. While Scott, upon becoming a resident of Maryland, could have reduced her PIP coverage to the $2500 minimum under Maryland law, she chose to maintain, and presumably continued to pay a greater premium for, the higher coverage which she had in Pennsylvania.

Whenever there is PIP or uninsured motorist coverage under more than one insurance policy, the coordination or prioritization of coverage is regulated by Art. 48A, § 543. Circumstances like those in the present case typically involve coverage under two policies. *See Travelers Ins. Co. v. Benton*, 278 Md. 542, 545, 365 A.2d 1000, 1003 (1976) ("whenever a person qualifying as an insured under his own motor vehicle liability policy is riding as a passenger in another vehicle registered in Maryland, PIP coverage potentially exists under both policies"). *See also MAIF v. Perry, supra*, 356 Md. at 676, 741 A.2d at 1118. Consequently, the coordination of benefits under Scott's State Farm policy and Bishop's MAIF policy, and the question of which insurer is primarily liable, are governed by Art. 48A, § 543. That section provides, in relevant part, as follows:

" **§ 543. Duplication of benefits; coordination of policies.**

"(a) *Recovery where more than one policy.*—Notwithstanding any other provision of this subtitle, no person shall recover benefits under the coverages described under §§ 539 [PIP] and 541 [liability and uninsured motorist coverage] of this subtitle from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis.

"(b) *Benefits payable by insurer of vehicle; exception.* (1) As to any person injured in an accident while occupying a motor vehicle for which the coverage described under § 539 of this subtitle is in effect, and as to any person

injured by such a motor vehicle as a pedestrian or while in, on, or alighting from any other vehicle powered by animal or muscular power, or on or alighting from an animal, the benefits shall be payable by the insurer of the motor vehicle.

\* \* \*

"(c) *Benefits payable by injured party's insurer.* As to any person insured under a policy providing the coverage described under §§ 539 and 541 of this subtitle who is injured in an accident while occupying a motor vehicle for which the coverage described under §§ 539 and 541 of this subtitle is not in effect, or struck as a pedestrian or injured while in, on, or alighting from any other vehicle powered by animal or muscular power or on or alighting from an animal by a motor vehicle for which the coverage described under §§ 539 and 541 of this subtitle is not in effect, the benefits shall be payable by the injured party's insurer providing such coverage; provided, however, that such benefits shall be reduced to the extent of any medical or disability benefits coverage applicable to the motor vehicle and collectible from the insurer of such motor vehicle."

State Farm's principal argument throughout this litigation, with which the Circuit Court agreed, has been that the medical and wage loss benefits under the State Farm policy constitute PIP benefits for purposes of Art. 48A, §§ 539 and 543(a), that § 543(a) prohibits the recovery of PIP benefits under more than one policy, and that, since Bishop received PIP benefits under his MAIF policy, subsection (a) of § 543 precludes the recovery of PIP benefits under the State Farm policy. State Farm chiefly relies upon *Travelers Ins. Co. v. Benton, supra,* 278 Md. 542, 365 A.2d 1000; *Yarmuth v. Government Employees Ins. Co.,* 286 Md. 256, 407 A.2d 315 (1979); and *Rafferty v. Allstate Ins. Co.,* 303 Md. 63, 492 A.2d 290 (1985), for its contention that the receipt of PIP benefits under one policy absolutely precludes the recovery of such benefits under a second policy. According to State Farm, because subsection (a) of § 543 begins with the phrase "Not-

withstanding any other provision of this subtitle," the coordination and priority provisions in subsections (b) and (c) of § 543 can have no application to this case. In State Farm's view, even if subsections (b) or (c) would dictate that State Farm was primarily liable and that MAIF was only secondarily liable, the fact that MAIF went ahead and paid benefits to Bishop prevents any recovery from State Farm under the language of subsection (a). State Farm asserts that the fact of the MAIF payment and the wording of subsection (a) renders any consideration of the priority provisions in subsections (b) and (c) "meaningless." (Respondent's brief at 4). State Farm alternatively argues that the Court of Special Appeals correctly construed the terms of the State Farm policy and that the priority provision in the policy prevented any recovery of PIP benefits from State Farm.

The petitioner Bishop initially argues that the Court of Special Appeals erred in affirming the grant of summary judgment on grounds other than those relied on by the Circuit Court. Alternatively, Bishop contends that the Court of Special Appeals misconstrued the priority provision in the State Farm policy. Bishop also argues that the Circuit Court misconstrued Art. 48A, § 543, and that State Farm is primarily liable under § 543 to the extent of Bishop's medical expenses and lost wages, up to the limit of State Farm's coverage. Bishop states that, if he recovers PIP benefits from State Farm, he will reimburse MAIF for the $2500 which it paid. Finally, Bishop argues that, if subsection (a) of § 543 were applicable to this case, it would apply only to the minimum statutorily required PIP coverage of $2500. Relying on *Hoffman v. United Services Auto. Ass'n,* 309 Md. 167, 522 A.2d 1320 (1987), Bishop contends that he can recover under the "optional excess personal injury protection ... coverage ... provided by a second policy." *Hoffman,* 309 Md. at 178, 522 A.2d at 1325.

### III.

Preliminarily, we point out that the Court of Special Appeals erred, in two respects, by affirming the summary judg-

ment based on the intermediate appellate court's interpretation of the priority provision in the State Farm policy.

First, it is a settled principle of Maryland appellate procedure that ordinarily an appellate court will review a grant of summary judgment only upon the grounds relied upon by the trial court. If the intermediate appellate court did not agree with the Circuit Court's interpretation of the Maryland regulatory scheme in Art. 48A, § 543, proper procedure would have been for the appellate court to reverse and remand for further proceedings. As this Court explained in *Gresser v. Anne Arundel County*, 349 Md. 542, 552, 709 A.2d 740, 745 (1998), it

"is a general rule that in appeals from the granting of a motion for summary judgment, absent exceptional circumstances, Maryland appellate courts will only consider the grounds upon which the lower court granted summary judgment, and if those grounds were erroneous, we will not speculate that summary judgment might have been granted on other grounds not reached by the trial court. 'Where the judgment appealed from is entered on motion for summary judgment, the appellate court ordinarily will review only the issue decided by the circuit court.' *T.H.E. Ins. Co. v. P.T.P. Inc.*, 331 Md. 406, 409 n. 2, 628 A.2d 223, 224 n. 2 (1993), *see also Boyer v. State*, 323 Md. 558, 588, 594 A.2d 121, 136 (1991); *Orkin v. Holy Cross Hospital*, 318 Md. 429, 435, 569 A.2d 207, 210 (1990); *Three Garden v. USF & G*, 318 Md. 98, 107–108, 567 A.2d 85, 89 (1989)."

The Court of Special Appeals, therefore, should have limited its inquiry to the Circuit Court's interpretation and application of § 543.

Moreover, because we shall hold that the Circuit Court's interpretation and application of § 543 was erroneous, that under § 543 State Farm and not MAIF was liable to pay PIP benefits to Bishop, and that MAIF's payment does not change or excuse State Farm's statutory liability, tne meaning of the priority language in State Farm's policy becomes irrelevant. To the extent that applicable insurance regulatory

statutes require broader or different coverage than the wording of an insurance policy, "the statutory language would prevail over the insurance policy language." *West American v. Popa*, 352 Md. 455, 465 n. 2, 723 A.2d 1, 6 n. 2 (1998). *See, e.g., Mutual Life v. Insurance Comm.*, 352 Md. 561, 574, 723 A.2d 891, 897 (1999) ("a statutorily required . . . obligation in an insurance policy may" not "be circumvented . . . by . . . terms in the policy"); *Staub v. American Motorists*, 345 Md. 428, 436–437, 693 A.2d 340, 344 (1997) ("the policy must be construed as though it did" reflect the requirements of the statute); *Enterprise v. Allstate*, 341 Md. 541, 550, 671 A.2d 509, 514 (1996); *Forbes v. Harleysville Mutual*, 322 Md. 689, 702, 589 A.2d 944, 950 (1991) ("if the insurance policy contains a limitation on coverage which is inconsistent with Art. 48A, . . . such limitation is unenforceable"); *Reese v. State Farm Mut. Auto. Ins.*, 285 Md. 548, 552 n. 1, 403 A.2d 1229, 1231 n. 1 (1979) ("with regard to insurance coverage required by statute, the provisions of the statute control to the extent of any discrepancy between the statute and a particular policy").

As we shall hold that Bishop was entitled to PIP benefits from State Farm under the priority provision contained in Art. 48A, § 543(b), the meaning of the priority language in the State Farm policy is a non-issue.[2]

## IV.

Art. 48A, § 543(b), states in pertinent part as follows:

"As to any person injured in an accident while occupying a motor vehicle for which the coverage described under § 539

---

**2.** State Farm suggests that if the Court of Special Appeals' interpretation of the State Farm policy language regarding priority is correct, and if such language is inconsistent with Art. 48A, § 543, then the statutory language would prevail *"only* to the extent of the $2,500.00 minimum statutory requirement for PIP coverage in Maryland." (Respondent's brief at 16, n. 2). There is no merit in State Farm's position; this identical argument has very recently been rejected by this Court. *See West American v. Popa*, 352 Md. 455, 477–478, 723 A.2d 1, 11–12 (1998), and cases there cited. *See also Van Horn v. Atlantic Mutual*, 334 Md. 669, 694–696, 641 A.2d 195, 207–208 (1994).

of this subtitle is in effect ..., the benefits shall be payable by the insurer of the motor vehicle."

The language could not be clearer. When a passenger in a motor vehicle is injured, the insurer of the vehicle "shall" pay the PIP benefits. Just last year, in *MAIF v. Perry, supra,* 356 Md. at 676, 741 A.2d at 1118, we reiterated this principle:

"A person injured in an automobile accident could be eligible for PIP benefits from two or more sources—the insurer of the vehicle involved in the accident and, if the person had his or her own insurance on another vehicle, from the insurer of that vehicle as well.... The law always precluded collecting from *both* insurers ... and required, where coverage was available from both sources, that the benefits be paid by the insurer of the vehicle involved in the accident."

State Farm has consistently taken the position, particularly by its reliance on § 543(a), that the first party medical and loss of wage coverage under its policy qualifies as "coverage described under § 539." State Farm, not MAIF, was the insurer of the vehicle which Bishop had been occupying when he was injured. It was "the insurer of the vehicle involved in the accident." *Perry, ibid.* Accordingly, under § 543(b), State Farm is required to pay Bishop PIP benefits to the extent of his medical expenses and loss of wages, up to the limits of the coverage in the State Farm policy.

Moreover, contrary to State Farm's argument, State Farm's payment of PIP benefits to Bishop will not result in a duplication of minimum required benefits in violation of § 543(a). Upon State Farm's payment of PIP benefits to Bishop, MAIF will be entitled to a refund of the $2500 which it had paid to Bishop. *See, e.g., National Farmers Union v. Nodak Mut. Ins.,* 682 F.2d 741, 743 (8th Cir.1982) (injured passenger's insurer entitled to reimbursement from driver's out-of-state insurer, which was primarily liable under state PIP statute); *National Farmers, etc. v. Dairyland Ins. Co.,* 485 F.Supp. 1009, 1013 (D.N.D.1980) (same); *Mid–Century Ins. Co. v. Travelers,* 982 P.2d 310, 315 (Colo.1999) (injured passenger's

insurer entitled to reimbursement from driver's insurer, which was primarily liable under state PIP statute); *Mustain v. U.S. Fidelity and Guar. Co.*, 925 P.2d 533, 536 (Okl.1996) (payment by secondarily liable UM insurer does not relieve primarily liable UM insurer, and secondarily liable insurer has right of subrogation against primarily liable insurer); 16 George J. Couch, *Cyclopedia of Insurance Law* § 61:20 (Mark S. Rhodes ed., 2d ed.1983).[3]

Our holding in this case gives full effect to both subsection (a) and subsection (b) of § 543. State Farm's interpretation of § 543, however, would give no effect to subsection (b) whenever the secondarily liable PIP insurer pays the claim before any payment from the primarily liable PIP insurer. Furthermore, nothing in the language of § 543 suggests that the General Assembly intended for the primarily liable PIP insurer to be relieved of PIP liability whenever the secondarily liable PIP insurer pays the claim first.

Moreover, State Farm's position is inconsistent with the legislative policy reflected in Art. 48A, § 544(a), which provides in relevant part as follows:

> "(a) All payments of benefits described under § 539 of this subtitle shall be made periodically as the claims therefore arise and within 30 days after satisfactory proof thereof is received by the insurer. . . ."

As pointed out by this Court in *Insurance Com'r v. Prop. & Cas. Corp.*, 313 Md. 518, 532, 546 A.2d 458, 465 (1988),

> "one of subtitle 35's [Art. 48A, §§ 538–547A] fundamental aims is the speedy provision of PIP benefits without the lengthy delays entailed by . . . litigation. Such prompt

---

**3.** Art. 48A, § 540(c), provides that an insurer which pays PIP benefits has no right of subrogation or claim against the tortfeasor or the tortfeasor's liability insurance. The PIP insurer may not recoup PIP benefits "by reason of the alleged fault of such other person in causing or contributing to the accident." § 540(c). This limitation on the right of subrogation would not apply to a secondarily liable PIP insurer seeking reimbursement from a primarily liable PIP insurer, as PIP benefits are not based on "the alleged fault" of the tortfeasor.

payment is a basic purpose of no-fault insurance general-ly...."

Under State Farm's interpretation of Art. 48A, § 543, however, PIP insurers would be encouraged to delay paying PIP claims. A primarily liable PIP insurer might delay in the hope that the secondarily liable PIP insurer will pay the claim, thereby, under State Farm's view, relieving the primarily liable insurer of its obligation. The secondarily liable PIP insurer, on the other hand, would not want to pay the claim because, upon payment, the secondarily liable insurer would be unable to recover from the primarily liable insurer. State Farm's interpretation of § 543 is clearly contrary to the public policy favoring prompt payment of PIP benefits.

In the present case, MAIF's prompt payment of Bishop's PIP claim was consistent with the policy of Art. 48A, § 544(a). State Farm's three-month delay in deciding Bishop's PIP claim, however, violated the spirit, if not the letter, of § 544(a). Nevertheless, under State Farm's interpretation of § 543, State Farm would benefit from its delay, whereas MAIF, which was only secondarily liable, would be prejudiced by its compliance with the requirement of prompt payment. Such an interpretation of § 543 is wholly unreasonable.

State Farm claims that its interpretation of § 543 is required by *Travelers Ins. Co. v. Benton, supra,* 278 Md. 542, 365 A.2d 1000; *Yarmuth v. Government Employees Ins. Co., supra,* 286 Md. 256, 407 A.2d 315; and *Rafferty v. Allstate Ins. Co., supra,* 303 Md. 63, 492 A.2d 290. These cases do not support State Farm's position. All three of these cases involved circumstances where, after the recovery of PIP or uninsured motorist benefits from the *primary* insurers, there was an effort to collect such benefits from *secondarily* liable insurers, and this Court held, under the particular facts of each case, that there could be no duplicative recovery from the secondarily liable insurers.

For example, in *Travelers Ins. Co. v. Benton, supra,* the claimant was injured while riding as a passenger in an automobile insured by MAIF, and she collected the $2500 statuto-

ry minimum PIP benefits from MAIF which was the *primary* insurer. The claimant also was an insured under a policy issued by Travelers which contained the $2500 statutory minimum PIP coverage. She sought to recover another $2500 from Travelers which was the secondarily liable insurer. In holding that a duplicative recovery of the $2500 required minimum PIP benefits from the *secondarily* liable insurer would violate § 543, this Court stated (278 Md. at 545–546, 365 A.2d at 1003–1004, emphasis supplied):

> "The statutory plan making PIP coverage mandatory on a 'no-fault basis' plainly requires that all motor vehicles registered in Maryland shall carry such insurance. As a consequence, whenever a person qualifying as an insured under his own motor vehicle liability policy is riding as a passenger in another vehicle registered in Maryland, PIP coverage potentially exists under both policies. The coordination of benefits provision contained in § 543(a) specifies that recovery shall be under one, but not both policies; it says in no uncertain terms that no person shall recover PIP benefits 'from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis.' As heretofore indicated, *§ 543(b) and (c) establish which insurer is liable for payment of PIP benefits. Where PIP coverage is 'in effect' on the motor vehicle involved in the accident, the insurer of that vehicle is liable for payment;* where such coverage 'is not in effect,' the injured person's insurer is liable for the PIP benefits."

Consequently, under the above-quoted language from *Benton,* the insurer of "the motor vehicle involved in the accident ... is liable for payment...." *Ibid.* In the case at bar, that insurer is State Farm, not MAIF. Nothing in the *Benton, Yarmuth,* or *Rafferty* cases remotely suggests that, if the secondarily liable insurer pays PIP or uninsured motorist benefits first, then the primarily liable insurer is relieved of its statutory obligation. Furthermore, State Farm cites no other cases, either in Maryland or elsewhere, supporting its view that payment of benefits by a secondarily liable insurer relieves a primarily liable insurer of its obligation to pay.

As State Farm was the insurer of the motor vehicle involved in the accident, in which Bishop was a passenger, State Farm is the insurer liable to pay PIP benefits to Bishop under Art. 48A, § 543.[4]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.*

---

**4.** In light of our holding that State Farm is liable as the primary insurer, we need not consider Bishop's alternative argument that, if the MAIF payment and Art. 48A, § 543(a), operated to relieve State Farm of an obligation to pay, that relief would only apply to the minimum statutorily required PIP benefits of $2500, and that, under the principles of *Hoffman v. United Services Auto. Ass'n,* 309 Md. 167, 177–178, 522 A.2d 1320, 1325 (1987), Bishop could recover under the optional excess PIP coverage provided by the State Farm Policy.