833 A.2d 8

**BGE HOME PRODUCTS & SERVICES, INC., et al.**

v.

**Michael Brian OWENS, et al.**

**No. 119, Sept. Term, 2002.**

Court of Appeals of Maryland.

Oct. 6, 2003.

Andrew Janquitto (Mudd, Harrison & Burch, on brief), Towson, for appellants.

Richard P. Shapiro (Richard P. Shapiro, P.A., on brief), Baltimore, Mark I. Cantor (Mark I. Cantor, P.A., on brief), Owings Mills, Charles M. Preston (Charles E. Stoner, Stoner, Preston & Boswell, Chtd., on brief), Westminster, for appellees.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, J.

"As we have pointed out on several occasions, the Maryland statutory provisions regulating motor vehicle insurance are comprehensive ... [and] mandate compulsory motor vehicle insurance or approved self-insurance," *Lewis v. Allstate Ins. Co.*, 368 Md. 44, 47, 792 A.2d 272, 273 (2002), and cases there cited. *See* Maryland Code (1977, 2002 Repl.Vol.), §§ 17–103 through 17–110 of the Transportation Article; Code (1997, 2002 Repl.Vol.), §§ 19–502 through 19–513 of the Insurance Article. The present declaratory judgment action requires us to explore the nature of the "approved self-insurance" alternative.

## I.

### A.

This declaratory judgment action arises out of a motor vehicle accident involving a service van, registered in Maryland, owned by the plaintiff-appellant D.L. Peterson Trust, and leased to the plaintiff-appellant BGE Home Products & Services, Inc. (Hereafter, both plaintiffs-appellants will collectively be referred to as "BGE"). The service van was assigned to Michael Brian Owens, a BGE employee.

A BGE directive, dated March 31, 1994, prohibited any employee from operating a BGE vehicle if the employee had consumed any alcohol or illegal substances. The directive also authorized an employee such as Owens to use the vehicle between work and home and to keep the vehicle at the employee's home during non-work periods. The directive stated that the "Company vehicle can be used to make minor stops between the shop and home (e.g. pick up bread, milk, etc. from store)," that the "Company vehicle can not be used for after hours functions without approval from Supervision," and that, otherwise, the vehicle can not be used "as a personal vehicle."

As previously mentioned, Maryland is a compulsory motor vehicle insurance state. Since the enactment of Ch. 73 of the Acts of 1972, effective January 1, 1973, "the owner of a motor vehicle registered or required to be registered in Maryland must maintain a motor vehicle insurance policy on the vehicle, or self-insurance approved by the M.V.A. [Motor Vehicle Administration]." *Van Horn v. Atlantic Mutual,* 334 Md. 669, 680–681, 641 A.2d 195, 200 (1994).

On January 14, 1998, BGE submitted to the M.V.A. a self-insurance application for its vehicles, setting forth the various coverages and the amounts of each coverage. The amounts were all the statutory minimums. The application contained other information such as the BGE official to contact with regard to the application, the BGE official in charge of adjusting claims, whether a reserve fund is maintained, and whether

there were currently unsatisfied tort judgments. BGE also submitted a signed "Guarantee," guaranteeing "the payment of any valid claims arising from a motor vehicle accident as if a policy of vehicle liability insurance were in effect. . . ."

Neither the application nor the Guarantee contained any exclusions, restrictions, definitions, or limitations other than the monetary limitations for the coverages. Specifically, the application and guarantee did not contain language found in some so-called "omnibus clauses" in many motor vehicle insurance policies which limit coverage for a person, other than the named insured, to situations where such person is " 'using . . . [the vehicle] with the permission of the named insured, provided his actual operation [was] within the scope of such permission.' " [1]

The MVA issued to BGE a "Certificate of Self–Insurance," granting to BGE "approval as a self-insurer in the State of Maryland. . . ." The Certificate was effective on February 1, 1998, and expired on February 1, 1999.

### B.

On July 16, 1998, Michael Brian Owens ended his work day as a BGE employee at about 5:00 p.m. when he completed a service call at a country club in Howard County located near the intersection of interstate route 70 and state route 97. Owens began driving the BGE van in the direction of his home in Carroll County. He planned, upon arrival at his home, to tell his wife that he was leaving her.

---

1. *National Grange Mutual Ins. Co. v. Pinkney*, 284 Md. 694, 696, 399 A.2d 877, 877 (1979). While we have quoted the "permissive user clause" from the insurance policy in the *Pinkney* case, we point out that permissive user clauses in other insurance policies often contain different wording. For example, the permissive user clause in the motor vehicle insurance policy involved in *Fisher v. USF & G Co.*, 86 Md.App. 322, 325, 586 A.2d 783, 784 (1991), did not contain the "scope of such permission" language. It simply defined, as an insured, "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow. . . ."

According to his deposition testimony, Owens became "scared" about the contemplated confrontation with his wife, and he stopped to visit a female "friend" who had an apartment on the route to Owens's home. Owens testified that he consumed "a bunch of beers," about "six or seven," at his friend's apartment. He then resumed the journey to his home. While driving north on state route 97 in Carroll County, Owens allegedly lost control of the van, negligently crossed the center line into the southbound lane, and collided with a vehicle operated by Stacy Smith Maczis and owned by Gail R. Smith. Aric Maczis was a passenger in the vehicle operated by Stacy Smith Maczis. This vehicle was insured, including uninsured/underinsured motorist coverage, by Nationwide Mutual Insurance Company.

Stacy Smith Maczis, Aric Maczis, and Gail R. Smith filed in the Circuit Court for Carroll County a five-count action against Michael Brian Owens, BGE, and Nationwide Mutual Insurance Company. Counts one and two were tort actions, by Stacy and Aric Maczis, against Owens and BGE, to recover for personal injuries suffered in the accident. Count three was a tort action, by Gail Smith, against Owens and BGE, to recover for the damages to Smith's motor vehicle. Counts four and five were contract actions, by Stacy and Aric Maczis, against Nationwide, to recover under the uninsured/underinsured coverage in the Nationwide insurance policy. The complaint alleged that the accident was caused by Owens's negligent driving and that Owens was operating the van in the scope of his employment for BGE.[2]

BGE filed, also in the Circuit Court for Carroll County, the present declaratory judgment action against its employee Owens and the tort claimants. Subsequently, Nationwide Mutual Insurance Company was allowed to intervene as an additional defendant. BGE's complaint alleged:

"At the time of the collision, Michael Brian Owens was violating the policies and procedures of BGE Home Prod-

---

**2.** For convenience, Stacy Smith Maczis, Aric Maczis, and Gail R. Smith will hereafter sometimes be referred to as the "tort claimants."

ucts & Services, Inc. because he was operating the service van on a personal errand and while under the influence of alcohol."

BGE asked for the following declaration:

"BGE Home Products & Services, Inc. is not obligated to provide either indemnity or defense to Michael Brian Owens with regard to the subject collision because, at the time of the collision, Michael Brian Owens was not operating the subject service van within the scope of permission."

After the taking of depositions and the filing of affidavits, the tort claimants filed a motion for a summary judgment declaring that, at the time of the accident, the employee Owens was operating the service van within the scope of BGE's permission and within the scope of his employment. The tort claimants relied on deposition testimony that numerous drivers of BGE's vehicles in Owens's division consumed alcohol on a regular basis when driving the vehicles, that BGE's "management or supervisory" personnel "knew about the use of alcohol and driving these vehicles on a regular basis," and that BGE acquiesced in the practice. After a hearing, the Circuit Court denied the tort claimants' motion for summary judgment, holding that there was a "genuine dispute of material" facts concerning the matter and that, if the scope of permission question needed to be resolved, it "must be resolved by the factfinder."

Subsequently, Nationwide filed a motion for a summary judgment "declaring that the Plaintiff, BGE, is required to provide a defense and indemnity to the extent of the limits of its [self-]insurance. . . ." Nationwide chiefly relied on the absence of any permissive user clause in BGE's self-insurance documents. Nationwide argued that an exclusion for driving beyond the scope of permission "cannot be implied or inferred." After the filing of legal memoranda, another hearing, and some procedural skirmishes, the Circuit Court filed an opinion holding that Nationwide's motion for summary judgment should be granted. The Court held that the absence in the self-insurance documents, of alcohol use or personal use

exclusions, and the absence of a permissive user clause, precluded BGE from disclaiming coverage on the ground that Owens was not driving within the scope of permission. On June 18, 2002, the Circuit Court filed a declaratory judgment stating, *inter alia,* as follows:

"Under the self-insurance guarantee, BGE Home Products & Services, Inc. is obligated to defend Owens in the underlying action;

"Under the self-insurance guarantee, BGE Home Products & Services, Inc. is obligated to indemnify Owens in the underlying action to the extent of any and all existing limits of coverage including, but not limited to, the amounts available under the BGE Home Products & Services, Inc.'s certificate of self-insurance, pursuant to Paragraph 6. . . ."

BGE appealed to the Court of Special Appeals. Prior to argument in that intermediate appellate court, this Court issued a writ of certiorari. *BG&E Home v. Owens,* 372 Md. 763, 816 A.2d 111 (2003).

## II.

BGE's arguments are as follows. BGE contends that, even if it has a duty to *indemnify* Owens up to the amounts of the self-insurance coverages, it has no duty to *defend* Owens. BGE asserts that the duty to defend an insured is entirely contractual, and that there is no duty to defend provision in any of its self-insurance documents. Absent such a provision, according to BGE, it has no duty to defend.

BGE further argues that it has no duty to defend Owens or indemnify him because, at the time of the accident, his driving the vehicle was not within the scope of his permissive use. BGE asserts that, despite the absence of a permissive user clause in the self-insurance documents, it "has a right to deny coverage for . . . a person who exceeded the scope of permission" (BGE's reply brief at 4). BGE's theory concerning the statutory self-insurance alternative is as follows (*id.* at 5–6, emphasis added):

"[T]he General Assembly did not intend the guarantee of self-insurance or the certificate of self-insurance to set forth the terms of the self-insurance (other than the limits). The General Assembly intended that a self-insurer's obligation to indemnify mirror an insurer's indemnity obligation, and that the self-insurer's obligation be *governed by the terms of a motor vehicle policy that it could have purchased.*"

In other words, BGE contends that the General Assembly, in authorizing approved self-insurance, intended that the self-insurance be as restrictive as the most restrictive motor vehicle insurance policy which the self-insurer could have purchased from an insurance company, even though the restrictions, exclusions, etc., were not mentioned in the self-insurance application or other self-insurance documents. BGE cites no statutory language, legislative history, or Maryland case law supporting its theory.

The defendants-appellees (*i.e.*, the tort claimants, Owens, and Nationwide) argue that under Maryland case law, as well as the public policy reflected in Maryland's compulsory motor vehicle insurance statutes, a self-insurer has the same duty to defend that an insurance company under a typical motor vehicle insurance policy would have. The defendants further argue that the absence of a permissive user clause or of any exclusions in BGE's self-insurance documents preclude the denial of coverage on the ground that the service van was allegedly not operated within the scope of permission when the accident occurred.

Alternatively, the defendants argue that, even if a permissive user clause is by implication deemed to be part of the self-insurance, there is a "potentiality" of coverage and thus a duty of the self-insurer to defend the underlying tort claims. The defendants suggest that, if a permissive user clause is found by implication, any scope of permission issue is interrelated with the scope of employment issue involved in the underlying tort actions. Therefore, according to the defendants, it would be inappropriate to resolve a scope of permission issue in a declaratory judgment action in advance of a resolution of the tort claims. *See, e.g., Litz v. State Farm*, 346 Md. 217, 233–

235, 695 A.2d 566, 573–575 (1997); *Harford Mutual v. Wood-fin,* 344 Md. 399, 412–413, 687 A.2d 652, 658 (1997); *Aetna v. Cochran,* 337 Md. 98, 102–104, 651 A.2d 859, 861–862 (1995); *Washington Metropolitan Area Transit Authority v. Queen,* 324 Md. 326, 333 n. 6, 597 A.2d 423, 426 n. 6 (1991); *Allstate Ins. Co. v. Atwood,* 319 Md. 247, 252–253, 256–257, 572 A.2d 154, 156, 158–159 (1990); *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 405–407, 347 A.2d 842, 848–850 (1975).

Finally, the defendants contend that, if the scope of permission issue is reached, the evidence before the Circuit Court shows that Owens's use of the service van at the time of the accident was permissive. They point out that BGE's directive permitted an employee driving a BGE vehicle to make minor stops en route to the employee's home and that, when the accident occurred, Owens had resumed the trip to his home. The defendants also submit that a scope of permission clause in a liability insurance policy or self-insurance documents, which excludes from coverage any motor vehicle accident where the tort defendant had been drinking alcoholic beverages, would violate Maryland's compulsory motor vehicle insurance laws. It would render uninsured a large class of persons involved in motor vehicle accidents. *See Jennings v. Government Employees Ins.,* 302 Md. 352, 360, 488 A.2d 166, 170 (1985) ("The exclusion of a large category of claimants, suffering bodily injury arising from accidents, is not consistent with this [compulsory insurance statutory] language").

We shall hold that the Circuit Court correctly declared that BGE had a duty to defend. We shall further hold that the court below correctly decided that the absence of a permissive user clause in the self-insurance documents precluded BGE from disclaiming indemnity coverage on the ground that Owens was not driving the vehicle within the scope of permission. Consequently, we do not reach any of the alternative arguments made by the defendants.

### III.

An insurer's duty to defend, while contractual, is nevertheless a fundamental feature of a basic liability insur-

ance policy. This Court in *Brohawn v. Transamerica Ins. Co., supra,* 276 Md. at 409–410, 347 A.2d at 851, explained:

> "The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums. Although the type of policy here considered is most often referred to as liability insurance, it is 'litigation insurance' as well, protecting the insured from the expense of defending suits brought against him."

*See, e.g., Jones v. Hyatt,* 356 Md. 639, 649, 741 A.2d 1099, 1104 (1999) (The "duty to defend an insured ... runs throughout the course of the underlying tort litigation against the insured"); *Vigilant v. Luppino,* 352 Md. 481, 489, 723 A.2d 14, 18 (1999) ("[A]s the Court of Special Appeals held, the duty to defend, by its very nature, is a continuing one that extends throughout the tort suit by the third party against the insured"); *Litz v. State Farm, supra,* 346 Md. at 225, 695 A.2d at 569–570 "The duty to defend is broader than the duty to indemnify. * * * The duty to defend exists 'even though "the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment." ' * * * This Court has also held that an insurer has a duty to defend when there exists a *'potentiality* that the claim could be covered by the policy.' * * * [T]he mere possibility that the insurer will have to indemnify triggers the duty to defend" (citations omitted, emphasis in original); *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 509, 667 A.2d 617, 619–620 (1995) ("[A]n insurer has a duty to defend its insured if there is a potentiality that the claim may be covered by the policy"); *Chantel Associates v. Mt. Vernon,* 338 Md. 131, 141, 656 A.2d 779, 784 (1995) ("[A]n insurance company has a duty to defend its insured for all claims which are potentially covered under an insurance policy"); *Aetna v. Cochran, supra,* 337 Md. 98, 651 A.2d 859.

We have pointed out that, in the Maryland compulsory motor vehicle insurance law, "the General Assembly ... recogniz[ed] approved self-insurance as the equivalent of an

insurance policy," *West American v. Popa,* 352 Md. 455, 475, 723 A.2d 1, 11 (1998).

The principal case in this Court dealing with approved self-insurance under the compulsory motor vehicle insurance law is *Hines v. Potomac Elec. Power Co.,* 305 Md. 369, 504 A.2d 632 (1986). *Hines* involved two required coverages (personal injury protection and uninsured motorist coverage) under a motor vehicle self-insurance application and certificate. In describing the approved self-insurance alternative, Judge Cole for the Court stated (305 Md. at 375, 504 A.2d at 635):

"[W]e see no reason to distinguish a certificate of self-insurance from a motor vehicle liability insurance policy. Indeed, by making the minimum amounts of required coverage applicable to motor vehicle liability policies as well as to all other forms of security, we think the legislature demonstrated a clear intent to treat all forms of insurance equally."

A holding that a self-insurer like BGE has no duty to defend would clearly not be treating basic motor vehicle liability self-insurance and basic motor vehicle liability insurance policies "equally." Since the duty to defend is such an important and integral part of all basic liability policies, it is highly unlikely that the General Assembly intended that motor vehicle self-insureds have no duty to defend. The Circuit Court correctly held that BGE had a duty to defend under its approved self-insurance.

## IV.

A "permissive user clause" which excludes coverage when a motor vehicle is not operated within "the scope of permission" is quite different from a "duty to defend" provision. Whereas the duty to defend is an integral part of all basic liability insurance policies, an exclusion for operating a motor vehicle outside of the scope of permission is not an integral part of all motor vehicle insurance policies.

As was pointed out by this Court in *National Grange Mutual Ins. Co. v. Pinkney,* 284 Md. 694, 704–706, 399 A.2d

877, 882–883 (1979), there is no requirement for permissive user language in "an omnibus clause to appear in any motor vehicle liability insurance policy," that "all omnibus clauses do not contain the same language," and that "they must be interpreted pursuant to their terms on a contract by contract or case by case basis, and not by sweeping language saying that ... we shall interpret ... [them] alike." As earlier noted, *supra* n. 1, some motor vehicle insurance policies which have permissive user clauses do not contain the "scope of permission" language. If we were to construct a permissive user clause for BGE's February 1998 self-insurance application, what type of clause should we draft? If we were to construct a clause excluding persons driving without permission, but not excluding permissive drivers who may exceed the scope of permission, such a clause would not help BGE's argument in this case. Nevertheless, clauses of this type are frequently found in motor vehicle insurance policies.

In *Hines v. Potomac Elec. Power Co.*, *supra*, 305 Md. at 375–376, 504 A.2d at 635, we refused to find by implication coverages in a self-insurance application which were not set forth in the self-insurance documents. We pointed out that, if such coverages were to exist, the self-insurer would have to set them forth in the self-insurance application. Similarly, we decline to find by implication exclusions, restrictions, or limitations which the self-insurer failed to put in the self-insurance application.

In fact, even when exclusions from or restrictions on required coverages are expressly set forth in a motor vehicle insurance policy, Maryland law generally deems most of these exclusions or restrictions void if they were not specifically authorized by the Legislature. *See, e.g., Lewis v. Allstate, supra*, 368 Md. at 48, 792 A.2d at 274 ("In light of the comprehensive nature of the statutory provisions regulating motor vehicle insurance, and the various limitations, conditions, exceptions and exclusions expressly authorized by the Legislature, this Court has consistently 'held invalid insurance policy limitations, exclusions and exceptions to the statutorily

required coverages which were not expressly authorized by the Legislature,' " quoting *Van Horn v. Atlantic Mutual, supra,* 334 Md. at 686, 641 A.2d at 203); *Dutta v. State Farm,* 363 Md. 540, 552, 769 A.2d 948, 955 (2001) (" 'exclusions from statutorily mandated insurance coverage not expressly authorized by the Legislature generally will not be recognized,' " quoting *West American v. Popa, supra,* 352 Md. at 475, 723 A.2d at 10); *Enterprise v. Allstate,* 341 Md. 541, 547, 671 A.2d 509, 512 (1996) ("Where the Legislature has mandated insurance coverage, this Court will not create exclusions that are not specifically set out in the statute"); *Lee v. Wheeler,* 310 Md. 233, 239, 528 A.2d 912, 915 (1987) ("[W]e will not imply exclusions nor recognize exclusions beyond those expressly enumerated by the legislature"). It would be an extreme anomaly to hold that express exclusions in a motor vehicle insurance policy, not specifically authorized by the Legislature, are generally invalid, but that a purported exclusion from self-insurance coverage, neither set forth in the self-insurance documents nor specifically authorized by the Legislature, is nevertheless recognized and valid.

We also reject BGE's theory that the General Assembly intended that a self-insurer's obligation be governed by the most restrictive motor vehicle insurance policy which the self-insurer could have purchased, even though the restrictions are not mentioned in the self-insurance documents. As earlier mentioned, BGE cites no statutory language, legislative history, or Maryland case law in support of this theory. Moreover, the theory is not in accord with our cases. As pointed out in Part III of this opinion, we have stated that "the General Assembly ... recogniz[ed] approved self-insurance as the equivalent of an insurance policy," *West American v. Popa, supra,* 352 Md. at 475, 723 A.2d at 11, and that the General Assembly "demonstrated a clear intent to treat all forms of insurance equally," *Hines v. Potomac Elec. Power Co., supra,* 305 Md. at 375, 504 A.2d at 635. Maryland law clearly does not recognize exclusions, restrictions, or limitations in insurance policies which are not set forth in the policies. In fact, as pointed out above, even many of those expressly set forth are

not given effect. Likewise, we should not recognize exclusions, restrictions, or limitations which are not mentioned in the self-insurance documents.

Where a particular provision is contained in virtually all Maryland motor vehicle insurance policies, it is not unreasonable to find by implication that the provision was intended to be part of self-insurance. This would be treating "all forms of insurance equally," *Hines, supra,* 305 Md. at 375, 504 A.2d at 635. But, where some insurance policies contain a "scope of permission" clause and some policies do not, and where the wording of such clauses varies to a considerable extent, it would not be reasonable for a court, retroactively, to draft a particular "scope of permission clause" for self-insurance documents that have omitted this provision. If a self-insurer desires a particular exclusion or restriction, the self-insurer should put it in its application. The exclusion or restriction will then have the same status as an exclusion or restriction in a motor vehicle insurance policy.

*JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY AFFIRMED. APPELLANTS TO PAY COSTS.*